Good morning, ladies and gentlemen. Our first case for argument this morning is Martin v. Petersen Health Operations. Mr. Brandt. I represent Petersen Health Care in this case. And the issue that's really before the court has to do with the complete preemption of Mr. Brandt, it would help if you raise your voice. It's an enormous room and that microphone records but doesn't amplify much. Very good. So I'm here on behalf of Petersen Health Care. And the point that is really raised by this appeal is whether there is complete preemption of the PREP Act for this long-term care facility action that was pending in the district court, Central District of Illinois in Peoria. And so from what you saw in our briefs and what has been briefed by the amici in this case, this act provides complete preemption of long-term care for several reasons. HHS, the CDC, the CMS. I'm sorry. Mr. Brandt, we are generalists. The fewer acronyms and initialisms you use, the better we will understand you. Appreciate that. I appreciate that. So federal agencies were provided under the act with the responsibility to respond to the COVID pandemic. And so these are Health and Human Services, Center for Disease Control, and others. What Health and Human Services was given was a directive to do what they could to address the COVID pandemic in a short period of time in a situation that was changing daily, weekly, and monthly. The Health and Human Services Agency designated long-term care facilities as critical partners in the fight against COVID. The PREP Act describes long-term care facilities, which is what my client is, as program partners. They were partners in proceeding to address the fight against COVID. The PREP Act directed the long-term care facilities were to manage and operate COVID countermeasures. The PREP Act and its subsequent declarations by the agencies established a special relationship between long-term care and the federal government. The PREP Act and nearly all of the directives by Health and Human Services declared that the federal government relied on long-term care, who was on the front lines. I must say I don't really understand the nature of this argument. Take, for example, this court's opinion in Liu Junhong against Boeing. The Federal Aviation Administration designated the airframe manufacturers as critical and even let them self-certify compliance with federal law. And Boeing then removed and said, we are a federal actor because we determine whether we've complied with federal law, and we rejected that position. I don't understand why health care facilities would be treated differently. I think the circumstances change the argument in this case. And I think that what happened with the, what happened in a pandemic, which was the government's trying to get some response together that included a lot of partners. Look, I don't see why compliance with federal law makes someone the same as the federal government. Right? The Supreme Court held otherwise in the cigarette case, Morris, Philip Morris. We held otherwise in Boeing. You really need to explain not why you think your client was doing the right thing, but why you think your client is the federal government. Well, I think I would point to a couple things. One of the things that makes this different in this context is, at least in part, the directives that are given out of the agencies that are trying to do this. That's why I brought up Liu Junhong against Boeing. The directives to Boeing were much too thick to be printed in manuals, right, tens of feet long on shelves. We said, no, no, that doesn't make Boeing a federal agency. Understood. I think that the distinction that I would draw is that in the crux of trying to deal with the pandemic, federal agencies had to morph what they were doing in terms of their relationships, and their relationships changed throughout the time period. And so, while I appreciate that administrative orders and the like don't necessarily have the force of law, they aren't irrelevant. And they have to be given some deference in this context. But how can an agency confer Article III jurisdiction on us? They cannot. But the Act itself, if we look at the Act itself, it talks about the proposition that the plain language, I'm sorry, no state or political subdivision of a state may establish or enforce covered countermeasures. And so, it's pretty clear from the Act, I think reading the Act, that it was intended that the federal government was going to run this program as it related to dealing with the entirety of the nation approach to dealing with COVID. But I think that the Federal Register indicates that the plain language of the PREP Act makes it clear that there is complete preemption of state law. So, interpretations are there. Now, let's go back. I understand a complete preemption argument to be that all claims of any kind under state law, no matter what claim it is, are impossible and are replaced by federal law. The statute you're relying on talks about covered countermeasures, but not other things, such as the staffing ratio of nurses to patients. I understand the plaintiff's claim to rely in part on a staffing ratio claim. Is it your assertion that that is a covered countermeasure? Well, I think that that's what the intent of the Act is. No, I want to know whether, don't start talking about people's mental states. The Act is a thing on a piece of paper. It does not have mental states. Agreed. Mental states of people who voted for it are irrelevant. The question is, what do those words mean? Is the staffing ratio of nurses to patients a covered countermeasure for purposes of this statute? Well, I believe it is. If you look at the definition of countermeasures, it includes a lot, and it would include a lot of the activities that would take place in a long-term care facility. It includes a lot. Does it include this? Is there something in the definitional clause that you're relying on? Concrete language in the statute. There's nothing that's been cited in our brief that says staffing. No, there isn't. Right, I agree. Well, if there's nothing there, then this is not a covered countermeasure, and therefore it's a bona fide claim under state law. Right? The areas of complete preemption, like labor law, the Supreme Court has held that for an interstate labor organization, all claims arise under federal law. There is no residual state category. But it's hard to see that this federal statute, 247D, says that all claims arise under federal law. Well, I think that I, as I read the act, and as we look at it, and we look at it in the context of other similar acts, such as ERISA, and why the courts have given deference to the idea that all of those cases— ERISA expressly preempts any state claim related to a pension plan. I don't see any language in 247D, which you continue to use an acronym for. I don't see any language that says that all state laws, including tort laws, related to health care are preempted. Well, I think I would just point to ERISA as being one that also— But you don't have a claim under ERISA, right? You have to deal with the language. You have to deal with the cards you've been dealt. I understand why you'd like to talk about ERISA, but this isn't an ERISA case. Let me just ask some housekeeping questions. Have any courts of appeals dealt with this issue since the Fifth Circuit in Mitchell two months ago? I don't believe so. Are there any of these 80-plus district court cases other than this one pending on appeal in the Seventh Circuit? Are there other cases pending in the Seventh Circuit? Is that your question? None that I know of. Yeah. Okay. Thank you. Also, the language of the Act, in addition to talking about covered countermeasures, says that it is dealing with the administration to—or the use by an individual. Of a covered countermeasure. And the thrust of your complaint is the fact that the nursing homes did not use, or the thrust of the complaint here—not yours, but the thrust of the complaint is that they did not use it. How is the PREP Act applicable in the first place, given that the focus of it is the use? I think it's probably the only factual issue. I mean, most of this are legal. Most of the issues here deal with— This is a legal issue, given the scope of the PREP Act. So, I think that the allegations say clearly that my client didn't use adequate countermeasures or adequate PPE. Correct. Did not use. And so, I think that when we use—when the phrase or the allegation is that we didn't use adequate, I think a fair reading of that is that we were using some. These were scarce resources, obviously, during the time period that we're talking about. But at the same point, there isn't an allegation we were using none. It's simply an allegation that we were using inadequate and that what was provided to the plaintiffs to cede in this case was inadequate. And so, I think that's different than saying non-use. Inadequate because it wasn't used. Well, we don't know. We're at the pleading stage, and we don't know— And therefore, we have to make the assumption in favor of the plaintiff rather than in favor of the defendant. Take what I think of as the core of this statute designed to deal with inoculations, which might cause, say, Guillain-Barre syndrome. And the plaintiff says, I got the flu because the nursing home did not inoculate any of its residents against flu, right? Or inoculated only half of its residents against flu. If they'd inoculated a resident who had gotten Guillain-Barre syndrome, that would be covered by this act. But you're saying that the claim that they didn't inoculate me is covered by this act. And that's hard to see as damages from use of a covered countermeasure. Well, another example contemplated by the Fourth Amended Declaration is where the provider, the nursing home, is prioritizing a different population. So, it gives the example of not providing the vaccine to some residents because they are prioritizing a different population for getting the vaccine. And so there, you may have an argument that the PREP Act and these advisory opinions do contemplate and talk about non-use. However, this is about the purposeful allocation of limited resources, prioritization. So, where does Martin make the claim that her mother died because of a purposeful allocation of a covered countermeasure to one person instead of another? It doesn't make that allegation. We're at the pleading stage. And so, that allegation... Are there any allegations in the complaint that the nursing home faced some sort of shortage of any covered countermeasures for Ms. Hill because it was administering them to other people? There is not. That's not part of the allegations of the complaint. So, then I come back to how do you get around that the PREP Act covers use of these countermeasures. And really, the allegations are all about the non-use and don't fall within this potential purposeful allocation. All I can point to is what we pointed to in our brief, and that is that the, I guess, binary use, if you want to call it that, of adequate. I don't think there's any contention that we didn't do anything. In other words, that we used nothing. I don't think that's an allegation of the complaint. I realize the other... Well, it's about the non-use. It's about the non-use of PPE. That's what they're alleging. I think it... I don't think that there is, reading the complaint as a whole, an allegation that no one was using any PPE in this case for Mrs. Martin. I think all they're saying is that what we were doing was inadequate, that the measures, the countermeasures that we were undertaking was inadequate. And I... You may have a perfectly good defense on the merits, but I don't see that it's either that your client is the federal government or that there's complete preemption, right? The benefit of hindsight is very great, and maybe what your client did is viewed as wrongful only with hindsight. But that... What we're here about now is to determine whether you're in federal court or state court to make that defense. Absolutely. And that is the core issue before the court. Okay. Thank you. Thank you. Mr. Papp, let me begin by asking you one of the questions I asked Mr. Brandt. Do you know of any appellate decisions on this subject since the Fifth Circuit's decision in Martin? There was a second Fifth Circuit decision called Perez at the end of March, which was per curiam and just followed that. Fifth Circuit, Martin. Right. Right. And the other question is, do you know of any other cases raising issues like this pending in the Seventh Circuit? No, I do not. We always try to coordinate. We don't want panels working at cross purposes. Understood. Okay. Thank you. Robert Peck on behalf of the Plaintiff Appellees. In our complaint, we did not allege mismanagement or purposeful allocation of scarce-covered countermeasures. We argued that they were not used. Even if you look at my friend's brief on page 14 of his opening brief characterizing our we allege that they did not develop or implement appropriate infection control and prevention policies and procedures. They failed to timely isolate incidents. And we also said that there was a lack of adequate PPE. Now, not all PPE is a covered countermeasure under the Act. Now, let's recall that the purpose of the PrEP Act is to embolden potential defendants by providing them with a protection against financial risk as a result of the use of covered countermeasures. We know that during a pandemic, you cannot undergo all the kinds of tests and preparations to combat it that you might. So a vaccine is a great example. So the vaccine, if it only has a 60% working rate, then the fact is if it's being advised that you use it, those 40% of the people who might get some sort of injury from it would not have an action against either the manufacturer or the provider. But they do have an opportunity through a compensation fund, which according to a report this morning is backlogged at least two years with 8,000 claims when over the previous 10 years they only had 500 claims. So the PrEP Act is not designed for essentially doing the things that a health care provider or a nursing home must do. So in addition to the three courts of appeals that ruled on this precise issue involving a nursing home, we also have the Eighth Circuit's decision involving a pork processing plant, which also claimed to be part of the critical infrastructure of the nation in combating the pandemic because the Center for Disease Control designated them as such. Well, I'm sorry. I need to ask one more logistical question that I should have asked Mr. Brandt too. The Department of Health and Human Services, through its Office of General Counsel, has apparently asserted that this federal statute completely preempts all state health-related claims. Has that argument ever been explicated, laid out in an amicus brief, filed in any of these many, many pending cases? It's not been explicated in terms of being expanded upon because it's rather light in terms of legal analysis and citation. That's why I'm asking whether they filed an amicus brief where they would have to explain their reasoning. They have not. OK. Do you know if this administration is standing behind that brief? The administration has not done anything to supplant those previous directives or decisions, and the Office of General Counsel has not issued a new one. But of course, this advisory opinion from the General Counsel— I think Mr. Brandt's brief includes an opinion that was issued during this administration, but not reasoned. It's a problem. And even that advisory opinion by the General Counsel indicates that it's not binding on any other General Counsel. It's not binding on anyone. Exactly. It wasn't issued after notice of comment rulemaking. Right. So it does not have the force and effect of law. So what we have is every court of appeals to look at any of these issues, and every valid district court decision has ruled against my friend and in favor of our position, so that affirmation of the decision below seems to be the rule of the day. Mr. Peck, it doesn't appear that the Fifth or the Third Circuits squarely considered claims for willful misconduct under the PREP Act. They talked about negligence, and as you know, you have both here. Right. Does that matter? It does not matter because the non-use is still not covered by the PREP Act, and so it doesn't matter whether it's willful or not. If the allegations were different and if it was covered under the PREP Act, do you agree that it would matter for preemption purposes, whether it's willful misconduct versus negligence? It would matter for purposes of federal jurisdiction, but of course, the problem is that we also have state-based arguments on why there is liability, and as a result, under Supreme Court precedent, there is no federal jurisdiction even under a complete preemption act. And the fact that it's outside the act is similar to this court's decision in Franciscan scheme, which recognized that ERISA, despite being a complete preemption act, did not apply to that allegation of misrepresentation. So in the end, we're here on a claim that the PREP Act applies when the allegations do not support it. There is no reason for federal jurisdiction here. The immunity provisions, which are not a jurisdictional grant, simply are a defense as ordinary preemption, and therefore is available to them when we return to state court. But there is no reason for this court to find that federal jurisdiction exists. To the extent that they claim that they were constricted, an argument that was made in all the other circuit courts as well, is one that simply doesn't seem to have any water. If you look at what they talked about, they talk about directives and guidances and recommendations and suggestions. That's not conscription, and as Your Honors noted, does not match the kind of involvement with the federal government that was insufficient both in Liu Zhonghong and in Watson. This is beyond where we need to go today, but we have the time. Assuming we agree with you and you're back in state court, and so Peterson raises an affirmative defense, these preemption issues, is there any issue preclusive effect of what we might do when you're back there warding off against their claims about the PREP Act? I think that there may be some potential preclusive issue effect, because if there is the determination that indeed our complaint is about non-use rather than use, that is a pretty strong indication that there is no preemption defense left. Because again, obviously this is only at the pleading stage, and it could be developed whether or not there is an allegation about use. And so do you win if we don't touch the use, non-use questions? We win, I think, regardless. But I think that you have to touch that question, because that's a question on whether or not the PREP Act applies. And again, I think that as the evidence is developed, it's possible that a usage might could possibly be it, or gloves, gowns, and masks. Well, I wore a KN95 mask in the courtroom when I entered it today, and that's a NIOSH certified mask. That's considered a protected countermeasure. Many people in this courtroom are wearing the blue surgical masks, which are not NIOSH  So that's why I don't think there's any basis to say that use applies in this case. Mr. Peck, do we need to decide the use, non-use question, though, for the willful misconduct claims? In other words, do we need to decide whether or not the PREP Act applies at all, rather than go into the willful misconduct claims? While we would suggest that you do, I don't think it's necessary because we do have other state-based claims that are not covered at all by the PREP Act, and as a result, plea preemption of the kind that grants federal jurisdiction really doesn't apply here. Unless there are other questions for me. Thank you very much. The case is taken under advisement.